Our next case for argument is 22-1264 Beaudette v. McDonough. Ms. Bay, please proceed. May it please the Court. The Veterans Court erred in granting the Beaudette's petition for writ of mandamus, particularly given that it completely failed to grapple with the meaning of the term medical determinations. This is not just some throwaway or even ancillary term that can be ignored, like the Veterans Court did. Rather, Congress dedicated an entire subsection of the statute to specifying that caregiver act decisions are to be considered medical determinations. This is the crux of the merits of this appeal. And as we demonstrated in our briefs, and as Judge Falvey noted in dissent, VA's interpretation is the only one giving meaning to that term and the only one that does not belie common sense. The Beaudettes have posited that the term medical determinations could refer to what's colloquially called the Colvin rule as set forth in a Veterans Court case. But as we demonstrated in our briefs, there's several problems with this. One is that there was no reason for Congress to have wanted to ensure that the Colvin rule applied to caregiver program decisions, given that they already applied to all board decisions, and that there was no reason to specifically invoke the Colvin rule in terms of just the caregiver act. And as we noted in our briefs, it would make no sense at all that caregiver act decisions are to be considered medical determinations. I understand your Colvin rule point. But my question to you is, should I really be looking? Am I supposed to be looking and saying, what does this word mean? Or am I really supposed to, by this case, be looking at and determining if Congress, is it Congress's intent to not have judicial review for caregiver entitlement fairly discernible from the statute? Isn't that the question I should be focusing on? I think that there needs to be a focus on both. I think it's a cardinal rule. I think it's your, your, well, anyway, answer the question. Go ahead. Well, it's, as the Supreme Court, and I think this Court has stated, primacy of text is first overall. And it's a cardinal rule that words in a statute should not be rendered mere supplesage, especially whereas here, it's not just some throwaway or ancillary term. And as to your Honor's question about the VJRA and whether there was an intent to displace Caregiver Act decisions from the scope of board review, I would say that the VA's interpretation is consistent with both the VJRA and with the Congressional intent to displace that. Are you aware of any other statutes that purport to limit judicial review of agency action based on reference to words in a regulation? I mean, I searched. I couldn't find any. Have you found any? I'm not aware of specific cases to that effect, but I don't think that that is even remotely fatal because, as I said before, medical determinations has to mean something. It's not something that can simply be ignored. And I think that, again, given the time. It just seems like an odd way to do it. I mean, let me back up a minute too. It's under the heading construction. What do you think construction, that kind of heading usually means? And are you aware of any, I mean, I couldn't find any statutes either that limited judicial review in that kind of section. I think that here, it's under the heading construction. And I think that means basically what it purports to mean, which is that all decisions under the Caregiver Act, whether they may seem in layman's terms to be medical determinations or not, are to be considered medical determinations. And the only way in that, which that makes sense, and that would give effect to both that phrase and congressional intent, is for that to refer to the VA regulation, which predated both the VJRA and the passage of that statute. There's simply no other reason for that phrase to be in there. And not just that phrase, but that entire subsection. And that even accords with the... It just seems strange. I'm not saying it's wrong. I think this is a very hard case. But it seems strange to determine that the strong presumption in favor of judicial review is overcome by a section that uses the term medical determination because Congress must have known about this regulation and used it that way. If that is the entire intent of that section, and you're saying there can be no other intent for it, why wouldn't it just say no judicial review? Doesn't it? Because the problem is, you all could change your reg anytime. And then how would that affect that statutory section? So why wouldn't Congress just have said no judicial review? If that's really 100% of the reason, and you could think of no other reason the word medical determination would be in the Caregiver Act in that way. Well, I mean, first, I don't see any other way that medical determination could be construed in the Caregiver Act. I think it's important to note that medical determination is a term of art as used in the regulatory, in VA's regulatory framework. And I'm not aware of medical determinations being used any other way. Do you think the word medical determination in the Caregiver Act is consistent with the term of art in the way the VA uses it? Absolutely. Okay, well, why don't we look at the regulation itself? Okay. So 20.104B, right? That's what we're talking about, correct? Yes. Okay, so the second sentence says, the board's appellate jurisdiction extends to, are you with me there? Yes. The board's appellate jurisdiction extends to questions of eligibility for, among other things, domiciliary care. What does that mean? I haven't looked at what VA has interpreted it to mean, but I would assume that to mean that it's the care of the veteran in their domicile or residence. In home care. I would assume so. That's correct. So is that not exactly what the Caregiver Act is setting out to provide? Isn't the Caregiver Act, the entire purpose of it, to assess the needs for and to provide in-home care for the veteran? The purpose of the Caregiver Act is to provide certain benefits to the caregivers of veterans who are in-home care to the veteran. Who are eligible. Is it for in-home care to the veteran? Yes, it is related to in-home care of the veteran. So you have the first sentence, or second sentence of your regulation that says, the board has appellate jurisdiction over decisions related to in-home care for the veteran. And then you're saying the next sentence says, medical determinations are not matters for the board's jurisdiction. And so you're saying Congress intended to somehow, what, do away with the first sentence of your regulation by saying in-home care to the veterans is not actually subject to board jurisdiction, even though this very regulatory section says it is? Well, I think the fact that it says, again, in the third sentence of the regulation, that medical determinations are beyond the board's jurisdiction is more specific than the general- What about those- They've got jobs. Is it more specific than the domiciliary care? Words which read directly on the Caregiver Act and the nature of the services provided thereby? But again, the Caregiver Act is regarding care of veterans by their caregivers, but it does have that phrase, construction and medical determinations. And where Judge Stoll was gonna go before I interrupted her is, what about the very next sentence? Typical example of these issues, issues which are medical determinations, include whether a particular drug should be prescribed, whether a specific type of physiotherapy should be ordered, similar judgment treatments about, and similar judgment treatment decisions. I don't understand how the Caregiver Act falls within those examples. Whether someone is entitled to in-home care is different from whether they should be bathed versus fed versus clothed versus, there's two different issues. Are you entitled to in-home care at all? And then what are the specific forms of in-home care should be entitled to? And it seems like your regulation makes it crystal clear that the question of domiciliary care in general is for board review, but specific questions about the nature of the particular acts being provided would be the kinds of medical determinations that the board doesn't review with specificity. And I agree that there are examples. Do you agree with that? Yes, except for the fact that it just says typical examples. It's not a comprehensive listing of everything that. What about the sentence above it where it says medical determinations, such as determinations of the need for and appropriateness of specific types of medical care and treatment for an individual? And then it gives examples. I mean, we can't just say medical determinations means anything in light of these two sentences in this regulation, right? Well, I mean, I think the reason that you could say that medical determinations means anything under the Caregiver Act or Caregiver Act decisions is because, again, Congress specifically. No, no, you're under the Caregiver Act. You're trying to say that the medical determination as used under the Caregiver Act is the same thing defined here in your regulation. So I'm just asking, in your regulation, don't we have to look at the word medical determinations and read it in light of the other language in the regulation? Which is quite extensive, actually. It is, but it's not, I think, restrictive. It says typical examples or such as. So it's giving examples of types of things that might- Yes, but whether you're entitled to in-home care doesn't fall into the such as. It isn't of the same, what is that language in trade cases? It's too generous or something like that. It's of the same type. And so what about this language should Congress have taken away that whether someone needs in-home care or not is a medical determination as opposed to the type of in-home care that they're gonna receive? Well, I mean, I think that, again, there is this language in the regulation giving examples of types of medical determinations or descriptions of medical determinations, but I still think you can't get away from the fact that Congress had to have meant something by medical determinations, and there's no other plausible explanation for it. But you want me to assume by implication that what they meant was this was the type of medical determination that you articulate in the regulation, but that same regulation says domiciliary care decisions are available to the board, and that's exactly what the Caregiver Act is. So I'm really struggling, given, quite frankly, I think your argument's very confusing because forget about the Caregiver Act. If I was asked to interpret this regulation on its face, forget about the Caregiver Act, I would conclude domiciliary care and whether it should be awarded or not is clearly something the board has jurisdiction over. Do you agree with that? If the Caregiver Act would use the word medical determination would you agree that there is no doubt it falls within the first portion of this regulation? I think that the reason that not all of the decisions under the Caregiver Act, absent that language, would fall under the regulation is because the very first part of the Caregiver Act does say the point of the Caregiver Act is to give assistance to the family givers, not to decide whether to- I think the hypothetical was setting aside the Caregiver Act, would you agree? Right, but- I mean, it's a hypothetical. Could you address the hypothetical? Yes, and I think if it were just strictly addressing the need for domiciliary care or the type of domiciliary care, that would be the case. But in this case we're not addressing specifically the domiciliary care, but whether the caregivers get certain benefits and assistance when the veteran is already under that domiciliary care. So I don't think it's exactly the same thing. I say even to my- I wanna, before we run out of time here, I've got a more fundamental question for you. And that is, why is the regulation put aside the Caregiver Act? Why is the Regulation 104A consistent with the statute? What in the statute authorizes this regulation? In the PCFC or in the VJR? I mean, medical care is a benefit, okay? The statute makes benefits reviewable by the board. How is it that this regulation is valid? Put aside the whole caregiver question. Why, what in the statute authorizes this regulation? What part of the statute is being construed in this regulation to foreclose medical care determinations from review by the board and by the Veterans Court? Well, this regulation, again, which predates the VJRA for some years, has never, has been valid since before the VJRA and has been continued to see- What, why? Why is it valid? What provision of the statute authorizes this regulation? Well, the VJRA, again, postdated the regulation and the VJRA, as such, Congress was presumably aware of this regulation when it enacted the VJRA. And under the regulation, certain types of decisions were never subject to board review. And then consequently, when the VJRA came out and gave Veterans Court jurisdiction over board decisions, it already accounted for an encapsulated- I think that maybe we're not getting clear communication. So unless I'm mistaken, I think that what Judge Dyke is asking you is what statutory section gave the VA the authority to decide the board would have no review over some things, like medical determinations? What statutory section allowed the VA to carve out jurisdiction from otherwise a very broad grant of jurisdiction in the statute itself? Is that what you were- Yes. I thought that's what you were getting at. So this has nothing to do with the VJRA. Forget the Caregiver Act in its entirety. Where did Congress give the Secretary the authority to decide it wouldn't have jurisdiction over certain questions? I'm not sure exactly the genesis of the original VA regulation, but- Do you know what the implementing statutes are that the regulation identifies? I don't have that available. It's 38 U.S.C. Section 511 and 38 U.S.C. 7104. Right, and 511 does hold that decisions of the VA are to be held as conclusive and final with certain exceptions, such as those enumerated in Section 72 of the VJRA, and I think the predecessor to 511 was Section 211, and those, and 511 is still good law and is still on the books, and again, I would say that the VJRA- What language in there are you relying on for support for the authority to make medical determinations not appealable? Well, I do believe that, at the very least, and I know that this is not in the statute, but in the claims court, the court decided in 1985 in Slotnick that the reason for 211, which is the predecessor to 511, was to prevent technical and complex medical determinations engendered in such claims from burdening the courts with the obligation of judicial review, so again, it's a very long-standing history of medical determinations not being subject to board review, and that was not nullified by the VJRA, and the Caregiver Act Congress- But what language in the VJRA are you relying on for that conclusion that it wasn't nullified? Because the VJRA, because Congress had presumptive knowledge of that regulation, and so there was nothing in the VJRA that would have nullified absent language or intent to do so, what was then 211 and what's now 511, as well as the VA regulation, given that they would have already had knowledge of that. I see I'm- Doesn't section 511 say the Secretary shall decide all questions of law and fact necessary to a decision by the Secretary under a law that affects the provision of benefits by the Secretary, right? Yes. So it's any provision of benefits. Do you agree the Caregiver Act is providing benefits? It is providing certain benefits to the caregivers of veterans. And the veteran. I think specifically it's providing the benefits to the caregivers, but the veteran is part of it, too. Which, in effect, is benefits to the veteran, right? Sure. Okay. I have a question that isn't related to the language, but it's more related to process. Can you please help me understand what the current state of these issues are with regard to ongoing cases? For example, in February, someone said that as of, I think, November of 2022, more than 430,000 notices of appeal rights were extended to veterans because of decisions under the Caregiver Act. So I want to know if you can help me understand what is the current state of all of that. And I don't mean each individual decision, of course. I just mean roughly how many, that was as of November of 2022, or more than a year fast forward. How many notices have been issued? What is the status of those cases? Are they docketed? Are people filing them? Has the board decided some? I mean, what's going on now? Because if I understand the facts right, prior to this mandamus, the board was never deciding Caregiver Act-related cases, and that now there's been a slew of notices and other things. So I just, I want to know the lay of the land. What is the impact of this then? So my understanding from talking to VA about this is that, as you mentioned, they did decide to not stay the court's order on the mandamus. And so they did start to allow board appeals of PCAFC decisions. And as you noted, that there's been somewhere north of 400 appeals and decisions issued by the board. And the most of them were actually- Wait, 400 or 400,000? Sorry, 400, not 400,000. Wait, I thought somewhere I read there was 400,000 notices of appeal. I don't have that with me. What I have is that as of some months ago, there were 400-something decisions by the board. Oh, that's decisions by the board. Oh, okay. Keep in mind, there's been decisions by the board and notice to people who may be eligible to bring cases before the board, right? It's red brief number page 15. Let's look at your page, or the red brief page 15. Let's see if I can flush this out. It's a half-foot note. Or maybe not, but actually in the text, it's a half-foot note. Yes, I think in the footnote- Yeah, the text says there have been, the veteran VA has sent out over 430,000 notices to veterans and caregivers. Yes, but that includes any veterans and caregivers who at any time had applied to their caregiver program. So I don't know exactly how many of those people who were sent notices decided to appeal to the board. But what we do know is that the board has issued somewhere north of 400 decisions as of a few months ago. How have those come out? Most of them were actually just remands for the purposes of curing notice and or obtaining a more specific statement because I think that most of those decisions that were appealed to the board had been issued prior to the veterans court's decision in mandamus. And so I don't think that those decisions were necessarily set up for a board review. So it had to remand back for things such as curing notice or issuing a statement of the case for the board to be able to fully consider it. In other words, they had to provide that more fulsome analysis of why there was a denial? Or a notice. But I don't think that, I think as my numbers have been that there are only as of at least the end of 2002 that there were only seven actual grants by the board. 2002? Sorry, 2022. Okay, all right. Yes. So seven grants? At least, yes, as of several months ago. Although apparently two of those grants were subsequently vacated. And then the remaining five grants were grants for higher tier stipends. But so very few actually. What happened in Mr. Baudet's case? So what happened in Mr. Baudet's case is that the Baudets, I think, tried to appeal to the board. VA hadn't issued, or they filed a notice of disagreement which is a precursor to appealing to the board. And after the Baudets had filed their petition, the VA determined to issue a statement of the case and reconsider the eligibility. And the Baudets were found eligible. So they never actually did appeal to the board or receive a board decision. Oh, okay. So just out of curiosity, why is it that that doesn't move this case? There's a few reasons. I think the biggest one is that this is certainly something that's capable of evading review, particularly since the VA is not allowed to appeal from board decisions. So it would be a harm capable of evading review and certainly capable of occurring again, given that this is not just a decision by the Veterans Court that applies to the Baudets, but applies across to the entire Caregiver Act. So I think that's one reason it wouldn't be mooted. Another reason is that, at least my understanding, and counsel can correct me if I'm mistaken, but that another claimant was added to the class for the purposes of ensuring that this wasn't mooted. Okay, so another question I have with regard to this is, why didn't the board act? And how long did it take before the mandamus was sought? And what I mean by that is, if the board believed it had no jurisdiction over the Caregiver Appeal, why didn't it dismiss the Caregiver Appeal for lack of jurisdiction? Why did it do nothing? Yeah, to follow up on that, 104A contemplates that the board is going to issue jurisdictional rules. And so why didn't that happen? My understanding, obviously I can't speculate as to the board's internal process, but my understanding is that the Baudets tried to, just looking for where I put this. They tried to run the matter to the board, but the board didn't do anything, right? Yes, they tried to appeal to the board. The board did not act, I believe, because the VA never issued a statement of the case. And then after the petition, the VA issued the Baudets a favorable decision in response to the Baudets' notice of disagreement. So I think that the board didn't consider the appeal because the VA didn't respond to the notice of disagreement. I do believe that in other, so there are the Baudets' decision where the board never issued a decision. My understanding is, and unfortunately, I don't have the case names in front of me, but there were other claimants in a similar situation to the Baudet where their case did make it to the board and the board did issue a decision predating the Veterans Courts order that it did not have jurisdiction under the PCAFC to consider their decision. I realize that you had a lot to have to prepare for for today. So if you don't know this, then don't worry. It's kind of a very tangential question. But do you know how long it was? I don't know the timing in this case. So the Baudets filed a notice of appeal, right, at some point. And you're saying the VA didn't respond to that notice of appeal? Or is that, am I understanding those facts right? Yes, my understanding is that the board first went through the clinical appeals process, was denied at both levels. Apparently, they sought to appeal the final VHA clinical appeals process in August of 2019. And then- That sought to appeal that to the board? Is that the appeal to the board, August of 2019? That is what the Baudet's brief states, yes. And they cite appendix 1267 to 1273 and then didn't receive a response and then approximately 10 or 11 months later filed a petition for writ of mandamus. So why didn't you seek to expedite this appeal or get a stay? I mean, and I just, I'm baffled. I'm truly baffled. If the government thought it should prevail, why in the world would you all send 430,000 notices to people saying they have appeal rights? I mean, I have to say, I mean, I know I'm not supposed to maybe look at that as evidence that you thought your case was weak, but I don't know how else to interpret it because you've now created a scenario in which you gave 430,000 veterans an expectation of review when you're claiming they shouldn't have one. I feel like that makes it harder to overturn the apple cart since you put some horses on it and took it into an impoverished area. Yes. I mean, certainly that was, you know, without divulging too much about the internal process, certainly that was something that was discussed, whether to seek a stay. But you didn't even ask for expedited appeal. So you now only get 430,000 notices. That's more than a year ago. You've got over 400 decisions, some of which awarded benefits. So what now if we say there's no review? Those veterans now lose the benefits that the board decided they were entitled to because it turns out the board never had review authority and therefore shouldn't have overturned the negative ruling that they got? My understanding is that the board's, I think, very few number of grants of higher-level benefits would not be reversed at this point. So even if they... But your data is only as of the end of 2022 and we're now at the end of 2023. Yes, I don't have the exact numbers of grants... Could I ask you to get that and submit it to the court? I will try to look for that, yes. I mean after this. I don't mean during the hearing. No, yes. I mean make a submission to the court that gives me updated numbers on, if possible, the number of notice of appeals that have been sent out, the number of cases filed with the board, if that's possible. Whatever is obtainable. I'm not asking for Herculean efforts, Ms. Bay. I'm just saying whatever the VA can provide in the way you seem to know readily that there have been 400 decisions as of the end of 2022 and that seven of them awarded benefits. So obviously that was ascertainable. Is there any way to update that information to reflect through the current time? Yes, I will certainly... But not Herculean efforts, right? And if you could update that, that would be useful. So is there a date? Is there an answer to the question of why you didn't seek a stay? Yes, I believe that it was in conjunction with the secretary himself and with the agency and DOJ to decide and go forward and not seek the stay. We did not believe that the stay would be successful. So we just decided to go ahead and appeal. What about expediting? Why was there no attempt to expedite? I believe the idea was discussed briefly. I can't answer why we determined to simply go through a regular level of appeal. But I do think that this also highlights, and I know this is delving into a different area of the case, but about also the whole issue of the Bodette's right to mandamus outside of the merits and their ability to have sought review, which actually would have come to a speedier resolution had they brought a 502 petition instead. But let me ask you about 502. There's no regulation that's being reviewed. It's just an interpretation of the regulation. Well, there's no regulation. So does 502 apply to interpretations of regulation? I think that 502 would apply because 502 allows direct review for actions of the Secretary in which sections 552A and 553 take place. And 553, to my knowledge, it just has to do with rulemaking, not the regulation published itself. And VA did undergo a rulemaking process and did state specifically in both its 2015 and 2020 final rules that- Do you have cases under 553 that have allowed interpretations that came out of rulemaking to be reviewed? I'm not aware of a specific case to that point, but I will say that 502 allows review in this court directly of VA rulemaking. So I don't think it's necessary that VA would have had to implement a specific- So you don't have a case? I don't have a case in front of me. I also know that in the Sullivan case, which is a related case that stayed, but addressing a very similar issue, what the Sullivans did is petition VA for rulemaking, finding that PCAFC decisions were subject to board review and VA denied that. And the Sullivans are using that as the nexus for their- That didn't happen. That didn't happen here. But again, we're not contending that the Beaudets would have had to petition for rulemaking, but rather that could have relied on the VA's 2015 and or 2020 rulemakings as the impetus for their 502 petitions. And again, I would say that even if they had petitioned for rulemaking, I think that this court addressing the issue directly would have led to a speedier resolution than going through the VA in the first place. So why wasn't the regulation amended after the Caregiver Act? You mean 20.104? I don't think that there was any reason to amend the regulation after the Caregiver- There has been some reasons to amend the regulation given that it seems not to apply to this situation. Well, we certainly, I mean, VA's understanding is that the regulation does apply to this situation. And certainly if this court determines to uphold the Veterans Court's decision, I can't say what VA or Congress will do in response to that. But at the time that the PCAFC and its amendments were passed VA's interpretation was that subsection C referred to the rule and therefore exempted PCAFC decisions from board review. And therefore there was no reason to amend- You're taking the normal course that an agency, given a confusing regulation which on its face appeared not to apply to caregiver decisions would amend the regulations to fix it. Well, I- And that didn't happen. I don't understand why. Well, again, I disagree- Instead of this interpretation in the Federal Register, very strange. I can't speak to exactly why VA didn't amend, but I would disagree that the regulation is confusing. It specifically does exempt medical determinations from board review and Congress specifically construed Caregiver Act decisions as medical determinations. I see I'm, if the court has no more questions, I'm not sure if I get any time on the phone. Yeah, you get all your vote. All right, thank you. It's an important case. We want to try and figure it out. Thank you. Thank you. Can you tell me how to say your name, Counselor? Jamal Gay. Oh, you're gonna have to say it again. I'm so sorry, I don't know. Timofeo? Mr. Timofeo, please proceed. Thank you, Your Honor. May it please the court. I'd like to focus on this question- Counselor, what about 104, what about 104A? Is that a valid regulation, please, to one side, the Caregiver Act? Your Honor, we haven't challenged the regulation. I understand. The question is, is it valid? We're not sure. We're not sure it is. We don't think it's valid, if the issue were before the court. The regulation itself sets two- If you win, the regulation falls, too? I'm sorry, Your Honor? If you win this case, the regulation falls as well? We can, it could, but we can also win this case even with the regulation on the books, and I'm happy to explain how that could be.  Tell me what the difference is between the regulation and the interpretation of the regulation in terms of statutory authority. Absolutely, Your Honor. So if we look at the regulation, as I think Chief Judge Moore already observed, it expressly says that the board's appellate jurisdiction extends the questions of eligibility, such as for hospitalization, for home and domiciliary care, and also for devices. You're not addressing my question. My question is statutory authorization for the regulation. Forget about parsing the regulations applied in the Caregiver Act. What is the statutory authority for this regulation, and how does it differ from the interpretation that the VA has placed on the regulation with respect to the Caregiver Act? So, Your Honor, the statute that the regulation itself cites as authority, it cites Section 511A and Section 7104. We think the regulation, the regulation actually seems inconsistent with Section 7104 because that section says that all final decisions for the Secretary shall be made by the board. And then this regulation withdraws a subset of decisions from the board's jurisdiction. So in that sense, it does seem inconsistent. But this court doesn't actually need to invalidate the regulation because- No, but we have to worry about being consistent. And if your victory in this case is gonna throw out the regulation, that lends even more significance to what we're doing. Your Honor, that is right. But I think we can actually work without- I just wanted to say one thing. You didn't file a 502 action challenging this regulation, did you? We did not. And you didn't argue in your brief anywhere that I could see that this regulation is invalid. Is that correct? Your Honor, that is correct. We are not challenging the regulation. I was answering Judge Dyke's question as to- And so now, am I also correct in understanding that this regulation could stand completely and continue to be operable, whether valid or not, for another case to decide potentially but it has nothing to do with your argument because your argument is the words medical determinations in the Caregiver Act aren't predicated on this regulation. Absolutely, Your Honor. And for two reasons. One deals with regulation, one deals with the actual language of Section C1. So regulation itself, the scope of what constitutes a medical determination on regulation is very narrow. What's the distinction between the two? I'm trying to understand. If we're going to render a decision in your favor, I want to know whether the effect of that decision down the road is going to invalidate 104A. What's the distinction? Is there an argument for preserving 104A while invalidating this interpretation that includes the Caregiver Act within 104A? Yes, Your Honor. So looking at the Caregiver Act, Section C1, actually, it doesn't say that all decisions on the Caregiver Act shall be medical determination. It only says decisions affecting the furnishing of assistance or support shall be medical determination. That's a discrete set of decisions concerning the provision of care or treatment. It doesn't actually extend to determinations of eligibility, which often have nothing to do, involve no medical judgment. For instance, whether a caregiver is a stepchild or the veteran, whether he is a non-family member living with a veteran, and therefore, is a family member under the statute, that involves no clinical judgment or judgmental treatment. So those eligibility determinations are not actually review of those, or the review of those is not prohibited under Section C1. And then the regulation itself, the meaning of what constitutes medical determination under the regulation is there in error. It's really just the judgmental treatment decisions. And so there can be medical decisions that are not really judgmental treatments. I mean, the board reviews questions of disability, reviews such questions, which are medical, such as whether a veteran has PTSD, whether the veteran has depression. That has never presented a problem for the board. It is, if you look at the understanding of medical determination under the RAC and under Colvin, it's a very narrow subset of decisions which are based on the clinical physicians' treatment decisions that the board actually does not have, say, the expertise to review. And then the regulation itself actually, again, it vests the board with jurisdiction of questions of eligibility for hospitalization, for home and domiciliary care, for devices such as wheelchairs. Is your argument, so in this case, the Baudets were, in fact, not even granted a decision by the board, but suppose that it had been dismissed. Is your argument that in the Baudets' case, since their claim was to give entitlements to domiciliary care in general, that that would have been appealable, even under this regulation? We believe that under this regulation, it should have been appealable, because what the VA's decision was, the VA said that they were not eligible. Well, initially, they were found eligible. Then the decision in 2018, in February, passed the deal. Took it away after he had the two surgeries and couldn't show up to the appointment. So I guess what I'm saying to you is, at least in the context of this case, that your argument is it goes under the first sentence, and it would be different. Would you agree that under this regulation, the Baudet appeal would not be, the board would not have jurisdiction over it under this regulation if, for example, the question wasn't, are they entitled to in-home care? But should the in-home care offer bathing services or only transportation, you know, the nature of the precise type of treatment that he was going to get at home? Is that what would fall within the medical determinations language by virtue of the regulation? Forget about the statute. If this were just under the regulation, would you agree that individual nuance decisions about what types of treatments he was entitled to within the home, those treatment decisions, would fall under the medical determinations rubric and not be appealable to the board? Your Honor, yes. It's hard to speak in hypotheticals. But taking it on hypothetically, yes, we would agree. And that's indeed the distinction. And actually, but in any case, it would be for the board to make that determination because the regulation says that only, I'm quoting from 1992 version, which was in effect when the Caregiver Act was passed, but the current regulation says almost the same. The only the board of veterans appeals will make final decisions with respect to jurisdiction. And the regulation also says all claimants have the right to appeal a determination made by the VHA that the board does not have jurisdictional authority to review a particular issue. So now, let me give you like an example based on the state. Let me be clear about what you're saying. Are you interpreting this construction provision of the Caregiver Act as having limited applicability in terms of precluding board review? And you're saying it doesn't, even the statutory language doesn't apply to the situation that we're dealing with here. Is that the point that you're making? That is exactly right, Judge Dyke, because the statute only applies to, again, the language of a statute is to decisions affecting the furnishing of care. So these are decisions about particular type of treatment or particular type of support that the caregiver shall get. It doesn't extend the question of eligibility. If Congress wanted to preclude- Wait, if you're saying it doesn't, you mean the regulation doesn't. I just want to make sure I'm tracking what you're saying. No, absolutely. So- You need a statute. So the statute itself, Section C-1, only says that what will be considered medical determination are decisions affecting the furnishing of assistance or support. So decisions of eligibility are not really decisions affecting the treatment of support. They don't affect the provision of support or assistance. They predicate determinations. If Congress wanted to say that no decision on the caregiver program shall be reviewable by the board, it could have used the language it used in the VA Mission Act, where it says that these will be clinical determinations not subject to the board review. It didn't do it here. So this court has, in order to give meaning to Section C-1, it has to actually say that the term, that the reference to decisions affecting the furnishing of assistance or support is more narrow than all decisions made under the Caregiver Act. And we think that the regulation supports that construction because the regulation says the board shall have jurisdiction over decisions, questions of eligibility for hospitalization, eye patient treatment, and for other benefits administered by the Veterans Health Administration. That's the exact agency that administers the caregiver benefits. And it's your position that that language about what the board has jurisdiction over is also consistent with the VJRA, right? It is absolutely consistent. I mean, the VJRA is a general background. It says that there will be provision, there will be judicial review from all decisions by the board. And then obviously Section 71-04 says that all final decisions by the secretary shall be rendered by the board. So the- I'm sorry, did you finish? Yes, so we think that when Congress passed this law, it passed it against the general background of VJRA. And certainly if Congress want to take such a momentous step as to preclude all board review and all judicial review of all decisions under the Caregiver Act, it would have used a more clear language than just said the term medical determination without explaining what it meant, without even referencing this regulation. But even if Congress really looked at the regulation, the regulation itself doesn't foreclose all decisions of eligibility from the board review. And it says that it is the board that will determine what is reviewable by the board and what is not under this regulation. We can give effect to the statute in terms of preclusion of board review, but interpret it in a way that's limited. It doesn't apply to the bodette situation. Absolutely, Your Honor. And one example is in the second level of review for the bodettes, they actually received a decision saying that the BHA could not determine whether or not Mr. Bodette was unable to perform activities of a daily living because he did not, there was no in-person exam. I mean, it's hard to say how that is actually, that rationale involves some kind of clinical judgment treatment. The first level denials that he received provided no reason whatsoever. And actually, partially responding to Judge Moore, your question to my friend earlier, in terms of how many decisions were issued by the board. So we think that we ran the same search of public databases of the board that we ran last year, and it's on page 53 of our brief. At the time, we found 250, slightly over 250 decisions where the board remanded cases to the BHA because it actually said the decisions were conclusory and it could not even. Did you redo that search at all? We redid that search yesterday. We came up with around 1,000 decisions. These are 1,000 decisions, many of which are remanded? It's 1,000 remands, 1,000 remands. And I will give actually just one example, and we can provide citations, submit the decision to the court. There was one decision where the board said, well, the BHA denied the veterans eligibility for caregiver benefits on the basis of its regulation that this court subsequently invalidated in Warrior Veterans. And so the board said, well, obviously, these benefits cannot be denied because the rationale was a reliance on the regulation that this court has struck down. Again, there is no reason why that decision cannot be made by the board. There is nothing clinical to that decision. There is no judgmental treatment element. There is really nothing medical to such a decision. So again, we think even putting aside whether this regulation is valid and we did not challenge it, we think that there is a way to read the statute, both given the meaning of a narrow scope of Section C1, which does not extend to eligibility decisions, and also given meaning even to the regulation on which the government relies. So even assuming that when Congress passed this law, it intended to really codify or somehow recreate the entire scope of this regulation, this regulation only exempts from the board review very narrow subset of decisions and expressly authorizes the board to review questions of eligibility and to make determinations what is reviewable by the board or what is not reviewable within the scope of the regulation. I'm very pleased with your argument. It has done a very nice job of saying how everything can be consistently interpreted. Can I ask whether you think the argument you're making today is consistent with what the Veterans Court held with regard to all of this? Because I read the Veterans Court decision as more broadly stating board review authority than what you argued for us today is some Caregiver Act decisions may not be eligible for board review. Some Caregiver Act decisions may be, and you even gave us some examples of the ones that don't involve, I think the words you used were nothing clinical, no judgmental treatment kind of thing. So you've struck a balance, which is a very appealing balance to me. I don't think that's what the Veterans Court held, though I'm a little, so I don't know that we can sort of necessarily affirm their, we can affirm their decision, but not their legal interpretation. Is that fair? Do you think they went further than what you've argued to me today in articulating what should be subject to board review coming out of the caregiver program? No, I think the question, to be fair to Veterans Court, the question before the Veterans Court was narrow. Whether or not- Well, to be fair to the Veterans Court, they probably didn't have this level of advocacy either. No, seriously, I mean, and just like if it goes from here to the Supreme Court, you'll get even better. It is my colleague who argued before Veterans Court that he, I thought he did an excellent job there, but I take you on this point. But the question before the Veterans Court was, I think, quite narrow. The question was, does Section C1's reference or use of the term medical determination withdraw board review and judicial review? And on that question, the Veterans Court, I submit the Veterans Court was correct. I mean, this section does not withdraw all board and all judicial review of all decisions under the Caregiver Act. I mean, there is no way to read the statute, the regulation to accomplish what the Veterans Administration argues. Now, the Veterans Court did not then kind of like take the next step and said, okay, let us see if we can construe the statute and give meaning to the statutory word, see if it can be read consistently, consistent with that regulation. Now, this court can do that because these are obviously like legal questions. I think the Secretary actually argues, the Secretary argues that the Veterans Court could and should have done that. I mean, this court can do it because it's, it has the expertise in construing statutes, construing regulations, and seeing if both can be reconciled. But, you know, in fairness to the Veterans Court, yes, the Veterans Court did not actually look and say, okay, how do we construe precise language of Section C1? Either is there a way in which, you know, that can, our construction can be consistent with the regulation, or does the regulation have to be, you know, struck down because it's inconsistent with the Caregiver Act? That the Veterans Court didn't do. But its decision on whether or not board review and judicial review was precluded altogether by this cryptic, somewhat cryptic reference to medical determination. I mean, on that decision, the Veterans Court correct. I'd like to ask that you and the government, if possible, coordinate some sort of either joint or simultaneous filing. Why don't we say no longer than a week, you know, limited to say 10 pages each, but where you articulate the current, I'm looking for the current state of the statistics regarding this. This is not an opportunity for additional argument. You can't follow up with, oh, an inequal argument, I said this, let me clarify. Just the statistics, how many, you know, how many notices of appeal, how many board decisions, how many resolutions, how many resulted in favorable outcome for the, whatever. But, you know, statistics. Can I ask you all to hopefully coordinate a single filing, and if you're, I will judge both of you if you're not capable of that, but I hope you are. If you're not capable of a single joint filing, then you can each file simultaneously within one week. You wonder, that is absolutely fine. We would be happy to coordinate with the Secretary. They obviously, they have the data, but they have been actually providing statistics, you know, over the court, you know, providing both statistics and the notices to us during this process. And since I'm not looking for argument, I'm looking for pure facts. I feel like you gotta be able to come together on that. No, absolutely, we would, if, yeah, we would be happy to work together with the government to provide that for the court. Can I give him the name for it? Well, you had a chance to apply. Well, no, I know, but I meant for him. No, no. Unless there are questions, I mean, about Chevron deference or Section 502, but we're happy to rest on our briefs or to sit on those points. Very good. Let's give Ms. Bay her rebuttal time, please. All for me. Thank you, Your Honor. Thank you, Your Honor. Just a few points of clarification. What did you think of the suggestion? Sorry? What did you think of the suggestion about interpreting the statute? I disagree with it. I would first note that this is a new argument that I don't believe was mentioned in either of their briefs or by the veterans court. This is a question of law, and we have to determine what the statute means. I would go with something different than what either of you argued. Sure. And I think that- Especially where, I just wanna note that you have emphasized how important it is that the word medical determinations be given some meaning. And there is some meaning. So what do you think of this interpretation? I don't think that this, I don't agree with Mr. Timofeyo's interpretation. It does say a decision by the secretary under this section affecting the furnishing of assistance or support. But we do believe that that encapsulates basically all assistance or support decisions under the Caregiver Act. These are already veterans who are receiving family caregiver support. And so everything that affects that, which is assistance for family caregivers of the eligible veterans, would fall under affecting the furnishing of assistance or support. Ms. May, are you sure? I mean, is this a completely new concept to you? Because if it is, maybe take a breath.  It seems like a really reasonable position. And how does it not give the VA everything it wants in that the board can still decide what amounts to clinical or judgmental treatment and therefore isn't subject to review, which I think 104A says the board's entitled to decide what it has jurisdiction over. And it could put all kinds of clinical judgment decisions in that category, but just sort of giant eligibility decisions of like the couple of examples he gave. And you're already saying those things won't be unsettled if we, people who've gotten medical, why isn't his position? And I know you haven't had a chance to think about it. And that's a totally fair decision, but why is your answer, no, we still disagree with it? It sounds so good. Well, we think, I mean, yes, this is a new argument. So I'm sort of considering it off the cuff, but we have obviously read through the statute and we believe that any decisions regarding eligibility, amounts of stipends, that sort of thing, are decisions affecting the furnishing of assistance or support, and therefore would all be considered medical determinations. We also believe that consistent with the Supreme Court's decision in George, that medical determination is a term of art within the VHA. Let me give you two choices. Choice number one, the VA is affirmed and the words medical determination are some colloquial thing. And we think your regulation does not put the domiciliary care into the non-reviewable category because it expressly exempts it from medical determination. So it seems wackadoo to think that Congress intended to overcome the strong presumption of judicial review by reference to a regulation, which on its face would have these kinds of decisions fall within board review. So that's position number one. And position number two is the really reasonable interpretation of all things that he just advocated. Which one do you want? Well, I mean, if it had to come between those two, obviously we would prefer the second to the first, but I actually do have a point. Doesn't that sound like really good too for everybody? Like, what's the downside? Well, I mean, I think the downside is it's simply not what Congress intended and it's simply not how this. But I don't, what is it? You've never made, what I find very interesting, the administrative nightmare argument. Why? Why haven't you made the argument to us that Congress didn't intend this because it would overwhelm the board with all of these potential new cases? I believe, and I don't have the page of the brief exactly handy, but I did believe we did make an administrative argument that it would overwhelm the board if the VA's, if the Veterans Court's decision were to remain in place. Well, what is the nature of, how many appeals does the board get in a year? You know, like, I'm not asking you, by the way. I'm not now giving you license in that filing to make arguments about how it's gonna overwhelm, but you can include numbers if you would like. And of course, he has the right to weigh in, too. One, here are the number of board appeals normally. Here are the number of appeals this would be, that kind of thing, to add. Because I mean, I really, I do wanna understand that. I wanna understand the impact of the decision you make. But recognize that impact of the decision you make doesn't mean that everybody who gets a notice of appeal necessarily is gonna be able to make a board appeal or be successful. Because his articulation gives the VA and the board the authority to decide what's in its jurisdiction or not. And all of those clinical judgments, you guys would decide or not, and then they go away and you'd stop getting filed. As soon as you set the landscape clearly, then you're not gonna have an overwhelming number of decisions. Yes, again, I don't, at least off the cuff, we don't agree, but we understand what you're coming from, and we do think it's better than invalidating the regulation completely. I do want to point out- Well, I don't think that was ever on the table. How is invalidating the regulation on the table? There's no 502 challenge here. Oh, no, I don't think it's on the table, but I think Your Honors asked me, or Judge Dyke had mentioned that if, I think he had mentioned to the Beaudets if they thought that they won the case, whether the regulation would fall. So I was just raising it as a matter of that. We don't think the validity of the regulation is on the table, and we don't think that the regulation is invalid at all. The last thing I wanted to do is just touch on the domiciliary care point. It was clarified to me by VA when Mr. Timofeya was speaking that the domiciliary, and I don't unfortunately have all the citations with me, but that the domiciliary care in the 20.104 regulation is actually not talking about family caregivers that would be at foot issue in the PCAFC, but rather it's talking about domiciliary care that would be provided in the veteran's home by VA or by a separate community care provider. But it is home care. It is home care, but it is not home care from a family caregiver. And the reason why, what is the basis for thinking it's home care only exclusively without a family member? Again, I don't, I unfortunately don't. Like is it defined somewhere in the? Yes, to me, but I do know that there is a statute that. I mean, I didn't see it defined in the regulations, for example. I didn't, yeah, I mean, I'm just getting this information now. So unfortunately, I don't have that at my fingertips. I do know that there is a statute that specifically deals with eligibility for domiciliary care, which would be eligible for board review under 20.104. And if it's of any interest, the statute is 38 USC 1710. And that does specifically deal with domiciliary care and eligibility for that program. And so we would submit that domiciliary care as referred to in the regulation would be referring presumably to that statute and not to anything to do with the caregiver program, which again, just deals with assistance for family caregivers who are already taking care of those veterans and is just providing. This feels like a really important issue as well. And I think I'm the one who threw that call of you out of left field. I don't think there was domiciliary care appeared in the case. So now I'm gonna ask you both to break it. So now we're gonna have separate filings, but hopefully you can come up, you can coordinate on the numbers because you guys shouldn't have different numbers, right? That part should be right. You shouldn't have different numbers between the two of you on how many more decisions or whatever, but you can each file separately 10 pages due in seven days. And I'd like to ask you to also tell me what your interpretation of these words, domiciliary care are in 104B and where it comes from and why you think it does or doesn't include. Okay. And just to clarify, that would be a joint filing just with the statistics? So these, okay. Yes. I mean, I would love it to be a joint filing on the statistics because you shouldn't have different numbers and I don't wanna see different numbers. Yes. And then how about this? Just give me five pages double spaced each on domiciliary care. Okay.  Seven days from today. We will provide- Seven days from today. Joint filing. 5 p.m. 5 p.m. Okay. Close of business. Seven days from today. Nobody's working late around Christmas season. All right. The court has no other questions. You would love to leave? No, no, I'm happy to keep arguing this. I still don't think that they fulfilled the lack of adequate means of relief, but with that, I will respectfully request that the court vacate. You all did a fabulous job. Thank you so much. This is a really challenging case and you both gave excellent arguments.